IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RODNEY MORGAN, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:14-CV-090-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Rodney Morgan (Morgan) seeks judicial review of the decision of the Commissioner of Social Security, which denied his application for disability insurance benefits (DIB) under Title II of the Social Security Act. The parties consented to the jurisdiction of the U.S. Magistrate Judge and the United States District Judge ordered the case be reassigned to this Court. (Doc. 18). After considering all the pleadings, briefs, and administrative record, this court affirms the Commissioner's decision and dismisses, with prejudice, Morgan's complaint.

## I. STATEMENT OF THE CASE

Morgan filed his application for DIB on March 8, 2010, alleging disability beginning April 23, 2009. Later, Morgan amended his alleged onset date to February 6, 2011. His application was denied initially by the Commissioner June 9, 2010, and again on reconsideration September 2, 2010. Morgan requested a hearing, which was held before an Administrative Law Judge (ALJ) on October 13, 2011. The ALJ issued his decision October 31, 2011, finding Morgan not disabled.

More specifically, the ALJ found:

Morgan met the last insured status requirements of the Act through September 20, 2015. Morgan had not engaged in substantial gainful activity since April 23, 2009. Morgan had the following severe impairments: degenerative disc disease; cirrhosis of the liver; left shoulder degenerative joint disease; and, right hip degenerative joint disease. Morgan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Morgan had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except Morgan is able to occasionally stoop to bend forward at the waist; occasionally kneel to bend at the knees to come to rest on the knees; and, occasionally reach overhead with the left arm. Morgan was unable to perform any past relevant work. However, given his age, education, work experience, and RFC, there were jobs that existed in significant numbers that Morgan could perform. Accordingly, the ALJ found Morgan to not be disabled under the Act.

After the ALJ issued his unfavorable decision, Morgan's attorney withdrew and Morgan secured new counsel, who appealed to the Appeals Council (AC) on December 20, 2011. The AC denied review on November 27, 2012. On December 18, 2012, Morgan's new attorney wrote to the AC complaining of the AC's failure to provide him with either the audio recording or transcripts of the audio recording of the administrative hearing. Morgan's attorney therefore asked for additional time to file a brief, which the AC granted, saying it would not act for twenty-five days. The next day, December 19, 2012, the AC indicated that if it did not hear from Morgan within twenty-five days it would be assumed he did not want to send in any more information, and the AC would proceed with their action based on the record as it stood. On January 14, 2013, Morgan submitted a brief and additional evidence (included at Tr. 257–61,

370–512) to the AC. The additional evidence consisted of medical records from three hospitals: Muenster Memorial Hospital, Nocona General Hospital, and Denton Regional Medical Center. On June 18, 2014, the AC issued a new decision. The AC set aside its decision dated November 27, 2012, and considered Morgan's additional evidence; however, the AC concluded the additional information did not provide a basis for changing the ALJ's decision. Thus, the AC again denied review.

Accordingly, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the [AC's] denial of [a claimant's] request for review"); *see also Rodriguez v. Barnhart*, 252 F.Supp.2d 329 (N.D. Tex. 2003) ("When the [AC] denies review, the ALJ's decision becomes the final decision, but the Court should still consider the entire record, including the evidence considered by the [AC], when reviewing the ALJ's decision.").

## II. FACTUAL BACKGROUND

According to his pleadings and testimony at the administrative hearing, Morgan was fifty-years-old at the time of his administrative hearing.[1] He has an eighth grade education and lives with his "common-law wife." In the past he has worked as a construction laborer, boiler maker, warehouse worker, and most recently, a truck driver. Morgan alleges he suffers from several health impairments, including degenerative disc disease, hepatitis C, cirrhosis of the liver, hypertension, diabetes mellitus, and anemia. But he alleges ultimately an automobile accident in April 2009 prevented him from working. He claims his impairments render him disabled under the Act.

## III. STANDARD OF REVIEW

---

[1] At the administrative hearing on October 13, 2011, Morgan testified he was born January 24, 1960. Tr. 50.

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in [the Listings]; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)).

Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If

substantial evidence supports the Commissioner's findings, then the findings are conclusive and

the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*,

402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may

not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the

Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's

decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the

Commissioner and not the courts to resolve.'" *Id*. (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Morgan raises two issues on appeal to this Court.[2] First, he claims new and material

evidence submitted to the AC both shows his hepatitis C to be severe, and shows he meets

Listing 5.05 for chronic liver disease. Second, he claims the ALJ failed to develop the record.

### A. AC Review

If an ALJ issues a decision unfavorable to a claimant, the claimant's recourse is to appeal

to the AC. *See* 20 C.F.R. § 416.1479. The regulations discuss the criteria the AC will apply in

deciding whether to grant or deny appeal.

> The [AC] will review a case if—(1) There appears to be an abuse of
> discretion by the [ALJ]; (2) There is an error of law; (3) The action, findings or
> conclusions of the [ALJ] are not supported by substantial evidence; or (4) There is
> a broad policy or procedural issue that may affect the general public interest.

20 C.F.R. § 416.1470(a). "In deciding whether to deny the claimant's request for review, the AC

---

[2] Morgan organizes his arguments into three issues. However, his first issue attacks, *inter alia*, the ALJ's severity finding at step two of the sequential analysis. Then, Morgan's third issue again attacks the ALJ's severity finding at step two. The Court combines these issues into one discussion of step-two severity. *See infra* Part IV.A.1.

must consider and evaluate any 'new and material evidence' that is submitted, if it relates to the period on or before the ALJ's decision." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). That is, the AC will consider evidence secured after the date of the ALJ's final decision, so long as it relates to the period on or before the ALJ's decision. *Id.* "Evidence is material if there 'is a reasonable possibility that it would have changed the outcome of the ALJ's determination.'" *Hamilton-Provost v. Colvin*, 605 F.App'x 233, 238 (5th Cir. 2015) (unpublished) (*per curiam*) (quoting *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). "The regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review." *Sun*, 793 F.3d at 511. The AC simply must "consider" the evidence. *Id.* at 511–12 (citing *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011), *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014), and *Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006)).

Morgan claims new and material evidence in this case takes the form of "updated medical evidence" from three hospitals. Pl.'s Br. 3. The Commissioner essentially states the additional evidence may have been new and material, but it was cumulative of what was already in the record. The Commissioner states the record contained evidence of the same symptoms and procedures as are contained in the new evidence, and the ALJ discussed these symptoms and procedures. Def.'s Br. 1–3. Morgan responds that the evidence is not cumulative. He states that the "scant" evidence before the ALJ did not show his hepatitis C to be severe, and showed his impairments did not meet listing 5.05A. However, claims Morgan, the new evidence shows the contrary on both counts, and can therefore not be considered cumulative. Pl.'s Reply Br. 1–4.

The newly submitted records span from January 5, 2011, to February 21, 2012. Tr. 371–512. These records show Morgan was treated at Nocona General four times, Denton Regional

three times, and Muenster Memorial once. It appears that on each instance, Morgan was admitted to the particular institution. The four instances at Nocona General occurred: January 5, 2011 (Tr. 397–401); February 6–10, 2011 (Tr. 371–73, 402–10); February 22–26, 2011 (Tr. 374, 411–18); and March 3–4, 2011 (Tr. 375–77, 419–24). The three instances at Denton Regional occurred: February 27–March 3, 2011 (Tr. 426–29); October 21–24, 2011 (Tr. 396, 430–70); and February 20–21, 2012 (Tr. 470–512). The instance at Muenster Memorial occurred March 4–5, 2011 (Tr. 379–94).

First, the Court notes the ALJ considered some of this evidence already. Tr. 42. For example, the ALJ had before him some records of Morgan's February 22–26 stay at Nocona General. Tr. 42, 302–03. The ALJ also had before him some records of Morgan's February 27–March 3 stay at Denton Regional. Tr. 42, 308–68. That is to say, not all of Morgan's newly submitted evidence is "new," nor is some of it even applicable to the relevant period. *See* Tr. 471–512 (medical records of emergency room visits and medical procedures performed in February 2012, long after the ALJ issued his opinion on October 31, 2011); *see, e.g.*, *Thomas v. Colvin*, 587 F.App'x 162, 163 (5th Cir. 2014) (unpublished) (*per curiam*) ("the relevant evidentiary period . . . begins with the onset date of the alleged disability . . . and ends on the date of the ALJ's decision."). Thus, there appear to be just three Nocona General visits, two Denton Regional visits, and one Muenster Memorial visit during the relevant period of which the ALJ was unaware.

Second, the Court notes Morgan's argument on materiality slightly misses the mark. Morgan claims that because the AC did not return the newly submitted evidence to him, the Commissioner has conceded that it is all material. Pl.'s Br. 15. Morgan cites a former version of a regulation to say, "If you submit evidence which does not relate to the period on or before the

date of the administrative law decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of the right to file a new application." Pl.'s Br. 15 (quoting 20 C.F.R. § 404.976(b)(1) (2014).[3]

By its own terms, however, the former regulation does not state what Morgan alleges it does. The regulation states the Commissioner will return evidence that does not relate to the appropriate time period. It does not state the Commissioner will return evidence when it is not material and thereby deem unreturned evidence to be material. As noted, material evidence is not just evidence which concerns the relevant time period. The materiality inquiry asks if there is a reasonable possibility that the new evidence would have changed the outcome of the ALJ's determination. *Hamilton-Provost*, 605 F.App'x at 238; *Latham*, 36 F.3d at 483. It is this inquiry the Court now undertakes in regard to the newly submitted evidence which both concerns the relevant time period, and was not considered by the ALJ. That is, the Court considers whether the new evidence creates a reasonable possibility the ALJ would have made a different determination as to both the severity of Morgan's hepatitis C at step two, and the compatibility of Morgan's impairments with Listing 5.05 at step three. First, the Court sets out the legal standards for step two severity and the step three listings. Then it proceeds to examine the allegedly new and material evidence under each legal standard.

### 1. Step Two Severity

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1991). The Court of Appeals for the Fifth Circuit in *Stone v. Heckler*, "set out the correct legal standard to use for determining 'nonseverity,' and held that it will be assumed that the wrong standard was

---

[3] The current version of the regulation reads, "If you submit evidence that does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will explain why it did not accept the additional evidence and will advise you of your right to file a new application." 20 C.F.R. § 404.976(b)(1) (2016).

applied unless the correct standard is set forth by reference to [*Stone*] or another [judicial opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit] gives is used." *Lynch v. Shalala*, 19 F.3d 14 (5th Cir. 1994) (internal quotation marks omitted) (*per curiam*); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (5th Cir. 1985) (internal quotation marks omitted). The Fifth Circuit has made clear, however, there is no requirement for the "use of 'magic words' for compliance with *Stone*." *Lynch*, 19 F.3d 14 (citing *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)). A court will remand "only where there is *no indication* the ALJ applied the correct legal standard." *Id.* (internal quotation marks omitted) (emphasis added).

> The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment.

SSR 85-28, 1985 WL 56856 (1985).

## 2. Listing 5.05

At step three, the ALJ asks whether a claimant's impairment meets or medically equals an impairment listed in Appendix 1. *See, e.g.*, *Audler*, 501 F.3d at 448. The burden is on the claimant to prove with medical evidence that he satisfies all the criteria in the listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (*per curiam*). If a claimant cannot show he "meets"

all the criteria in the listing, he may nonetheless seek to prove he "medically equals" or is equivalent to a listing, which would thereby render her disabled. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1993); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531 (emphasis in original).

Section 5.00 of the Listings contains information related to the Digestive System, which includes Listing 5.05–Chronic Liver Disease. Subsection D of Section 5.00 provides general information about the evaluation of chronic liver disease.

> Chronic liver disease is characterized by liver cell necrosis, inflammation, or scarring (fibrosis or cirrhosis), due to any cause, that persists for more than 6 months. Chronic liver disease may result in portal hypertension, cholestasis (suppression of bile flow), extrahepatic manifestations, or liver cancer. . . . Significant loss of liver function may be manifested by hemorrhage from varices or portal hypertensive gastropathy, ascites (accumulation of fluid in the abdominal cavity), hydrothorax (ascitic fluid in the chest cavity), or encephalopathy. There can also be progressive deterioration of laboratory findings that are indicative of liver dysfunction. Liver transplantation is the only definitive cure for end stage liver disease (ESLD).

20 C.F.R. Part 404, Appendix 1, Subpart P § 5.00D. Section 5.05 contains the actual listing for chronic liver disease, which Morgan claims he meets or equals. It requires:

> Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood.

20 C.F.R. Part 404, Appendix 1, Subpart P § 5.05A. Section 5.00D5, referred to above, provides:

> 5. Gastrointestinal hemorrhage (5.02 and 5.05A). Gastrointestinal hemorrhaging can result in hematemesis (vomiting of blood), melena (tarry stools), or hematochezia (bloody stools). . . . Under 5.05A, hemodynamic instability is diagnosed with signs such as pallor (pale skin), diaphoresis (profuse

perspiration), rapid pulse, low blood pressure, postural hypotension (pronounced fall in blood pressure when arising to an upright position from lying down) or syncope (fainting). Hemorrhaging that results in hemodynamic instability is potentially life-threatening and therefore requires hospitalization for transfusion and supportive care. Under 5.05A, we require only one hospitalization for transfusion of at least 2 units of blood.

20 C.F.R. Part 404, Appendix 1, Subpart P § 5.00D5.

### 3. "New and Material" Evidence

#### a. Hepatitis C

The Court proceeds chronologically, beginning with Morgan's January 5, 2011 visit to Nocona General. Tr. 398–401. Morgan presented complaining of continued bleeding after he pulled out his own tooth with pliers. Tr. 399. Apparently, Morgan was given gauze and told to lie back on a bed to wait for the doctor. Morgan stated he was not waiting and walked out of hospital. Morgan does not specify—and the Court cannot fathom—how this evidence would have led the ALJ to a different conclusion regarding the severity of Morgan's hepatitis C.

#### February 6–10, 2011

Next, Morgan was admitted to Nocona General from February 6–10, 2011. Tr. 371–73, 402–10. Morgan complained he had been feeling poorly all day since vomiting early in the morning, with what appeared to be some blood in his vomit. Tr. 371. Doctors assessed him and decided to admit him for the night to run some tests, including blood sugar and pressure tests, and gastrointestinal (GI) tests. Doctors suspected Morgan had an upper GI bleed, and gave him three units of blood. Doctors also suspected the upper GI bleed was caused by esophageal varices (enlarged veins in the lower part of the esophagus).[4] Morgan claimed he had a history of hepatitis C. Following the transfusion and administration of liquids, Morgan "had no further GI

---

[4] Stedman's Medical Dictionary 619, 1931 (Maureen Barlow Pugh et al. eds., 2000).

bleeding," as of three days after admission to Nocona General. The following day, Morgan stated he was doing better, having progressively advanced his diet into more solid foods without incident. Morgan was discharged after four days with instructions to return in two weeks with a choice of physician for a GI referral. His discharge diagnosis was as follows: "1. upper GI bleed most likely secondary to esophageal varices; 2. anemia secondary to acute blood loss; 3. hepatitis C." Tr. 373.

This summary diagnosis of hepatitis C was the only mention of such impairment in the four days medical records, physician treatment notes, and extensive laboratory tests. No evidence indicates that the discharge diagnosis was based on anything more than Morgan's assertion that he had hepatitis C upon admission to Nocona General. What's more, no physician opined that Morgan's hepatitis C was severe. Morgan does not show that a reasonable possibility exists that this new evidence would have changed the ALJ's determination that Morgan's hepatitis C was not severe. *Latham*, 36 F.3d at 483. That is, while the evidence of Morgan's February 6–10 admission to Nocona General may have been new, and may have concerned the relevant time period, Morgan does not show that it is material.

*February 22–26, 2011*

Next, Morgan was again admitted to Nocona General on February 22, 2011, with complaints of fever, weakness, paleness, and abdominal pain. Tr. 412. Physician progress notes over the next four days indicate that the week prior, Morgan underwent a procedure to place bands around his esophageal varices. Tr. 413. Initially, doctors suspected Morgan was suffering from a spontaneous bacterial infection, so they gave him intravenous (IV) fluids, and he responded well.

Doctors performed clinical and laboratory tests and blood work, then gave Morgan a

transfusion of four units of packed red blood cells with the potential plan to give him four more units after he rested a few days. Tr. 374. However, according to physician statements, Morgan and his family grew "impatient with having to send off so far to get the blood and [have] decided to leave Against Medical Advice with the plans to follow-up with their previous gastroenterologist in Denton, Dr. Panzer. Patient was counseled against this move but decided to do this on their own." Tr. 374.

Morgan's discharge diagnosis was as follows: "1. hypovolemic shock; 2. upper GI bleed secondary to esophageal varices; 3. cirrhosis secondary to hepatitis C; 4. anemia secondary to acute blood loss; 5. hypoalbuminemia secondary to liver failure." Tr. 374. The Court notes the ALJ considered examination records from some of Morgan's stay at Nocona General, including test results and diagnosis of GI bleed, but did not have all the records. Tr. 42, 302–03. The Court also notes that at no point in the physician's notes, laboratory test results, or any other medical records from those three days, is Morgan's hepatitis C mentioned. The only mentions of such impairment occur in Morgan's intake diagnosis, discharge diagnosis (Tr. 374), and self-reported diagnosis history (Tr. 412).

Nowhere in these records do doctors at Nocona General opine that Morgan's hepatitis C is severe. Again, Morgan fails to show a reasonable possibility that these records would have changed the outcome of the ALJ's decision that the hepatitis C was not severe. *Latham*, 36 F.3d at 483. Indeed, evidence from Morgan's admission to Nocona General which the ALJ in fact considered contains the same mention of hepatitis C as exists in the new evidence. Thus, while again some evidence of Morgan's February 22–26 admission to Nocona General may be new, and concerned the relevant time period, Morgan fails to show that it is material.

*February 27 – March 3, 2011*

Next, Morgan checked into Denton Regional on February 27, 2011, complaining of abdominal pain, which had become more intense when he ate the day before. Tr. 426–29. Initially, he was diagnosed with abdominal pain and cirrhosis of the liver with ascites. Tr. 426. He underwent blood tests and was examined by physicians, who noted

> CT scan of the abdomen in the Emergency Room showed some calcification in the biliary tree with some distention and actually less ascites that was better compared to previous study. Incidentally noted were renal calculi. There were nonobstructing (*sic*). He was admitted for control of pain further evaluation. . . . Surgery consultation was obtained, recommended further imaging studies, the biliary tract. GI consultation was also achieved. GI felt that he needed treatment for constipation . . . Relistor was used.
> Once bowel movement was achieved, Relistor was discontinued. The patient was discharged home . . . .
> His condition at time of discharge is fair. His prognosis is fair.

Tr. 426–27. At only one point during Morgan's three-day stay at Denton Regional is a mention of hepatitis C made; that in a portion titled, "Secondary Diagnosis." Tr. 426. At no point do these records contain an opinion that Morgan's hepatitis C is severe. Furthermore, the ALJ had before him extensive records from this stay at Denton Regional, totaling more than sixty pages. Tr. 42, 307–68. Morgan's new evidence of his February 27 visit to Denton Regional consists of just four additional pages. Tr. 426–29.

Once again, Morgan does not explain how a reasonable possibility exists that these four additional pages would have changed the outcome of the ALJ's decision that Morgan's hepatitis C was not severe. *Latham*, 36 F.3d at 483. Even assuming these four pages are new evidence and concern the appropriate time period, Morgan once more fails to show that they are material.

*March 3–4, 2011*

On March 3–4, 2011, Morgan visited Nocona General for the third time, again complaining of abdominal pain. Tr. 375–77. His wife told doctors he had not had a bowel movement in some time. Tr. 375. Additionally, Morgan had recently been prescribed a

medication, apparently for hepatitis C and cirrhosis. The day he began taking the medication he experienced severe abdominal pain. Doctors admitted Morgan and administered mineral oil and soap suds enemas to relieve Morgan's constipation. The enemas relieved Morgan's abdominal pain and he was discharged the following day after having a bowel movement. Tr. 377.

Morgan reported he had a past history of hepatitis C, but it appears the thrust of this visit to Nocona General was treatment for constipation. Doctors noted as follows:

> Patient was admitted with constipation and cramping abdominal pain. He was given mineral oil and soap suds enemas alternating q 1-hour. He was also given Demerol 50mg and Phenergan 25mg IM for relief of the pain. After several enemas the patient did have relief of his discomfort and his bowels moved. The following morning he was up and awake and his usual baseline feeling much better. He was ready for discharge home. He will be continued on his usual medications including the Miralax with increase p.o. fluids. He will follow-up with his usual physician next week.

Tr. 377. *See also* Tr. 424 (after clinical scans and blood reports, Morgan received a lone diagnosis of constipation). Once again, nowhere in these records is there an opinion that Morgan's hepatitis C is severe. And once again, Morgan does not explain how a reasonable possibility exists that this new evidence would have impacted the ALJ's determination that Morgan's hepatitis C was not severe. *Latham*, 36 F.3d at 483. These records may be new, and they may concern the appropriate time period, but Morgan fails to show they are material.

*March 4–5, 2011*

Despite being discharged from Nocona General March 4, 2011, Morgan presented to the ER in Muenster Memorial later that day complaining of abdominal pain and constipation, along with other impairments. Tr. 379. Noting an earlier but undated visit to Nocona General, apparently including an x-ray performed at Nocona General which showed fecal impaction, doctors at Muenster Memorial wanted to perform a "disimpact" procedure on Morgan. Tr. 381. It is not clear whether this procedure was ever completed. Doctors performed a number of tests,

including x-rays, which showed: "The gas pattern is within normal limits with no abdominal calcifications. . . . No acute abnormality is demonstrated in the abdomen." Tr. 393.

Doctors again noted that upon admission, Morgan complained of hepatitis C, (Tr. 379, 381), but did not indicate what part if any it played in Morgan's stay at Muenster Memorial. Tr. 381. At no point do Muenster Memorial doctors opine that Morgan's hepatitis C is severe. Morgan does not explain how a reasonable possibility exists that this new evidence would have impacted the outcome of the ALJ's decision. *Latham*, 36 F.3d at 483. These records may be new. They may concern the appropriate time period. But Morgan fails to show they are material evidence.

### *October 21–24, 2011*

Lastly, approximately seven months later, Morgan visited Denton Regional on October 21, 2011. Tr. 396. He primarily complained of black stool and abdominal pain. Tr. 432. Morgan reported he had a history of liver cirrhosis, hepatitis C, hypertension, and diabetes mellitus. Tr. 432. Doctors reviewed Morgan's medical file and performed numerous additional laboratory tests. Tr. 430–70. Morgan underwent an EGD procedure with esophageal variceal banding, apparently the same procedure performed at Nocona General earlier that year on February 22. Tr. 396. Following his operation, Morgan was diagnosed as follows: "1. Nonbleeding esophageal varices; 2. Portal gastropathy with upper gastrointestinal bleeding likely secondary to this complication of cirrhosis; 3. hiatal hernia." Tr. 396.

Nowhere in the more than forty pages of medical records from this October 21–24 admission to Denton Regional does Morgan point to a medical opinion indicating his hepatitis C was severe. Morgan, once again, does not explain how there is a reasonable possibility the records of Morgan's EGD procedure would have changed the ALJ's conclusion that Morgan's

hepatitis C was not severe. *Latham*, 36 F.3d at 483. These records of Morgan's October 21–24 admission to Denton Regional may have been new. They may have concerned the relevant period. But Morgan does not show they are material under the law.

It is plain to the Court that Morgan submitted "new" evidence to the AC which was not presented to the ALJ. In most cases, this new evidence concerned the relevant time period. However, the Court must additionally make the materiality inquiry. It must ask whether there exists a reasonable possibility that the new evidence would have changed the outcome of the ALJ's determination that Morgan's hepatitis C was not severe. *Latham*, 36 F.3d at 483. Concerning each piece of new evidence, the Court is forced to answer in the negative. Morgan points few mentions of his hepatitis C in these records, fewer inferences that his hepatitis C is severe, and no instances whatsoever of a physician opining his hepatitis C is severe. The Court cannot conclude that there exists a reasonable possibility that this new evidence would have changed the ALJ's decision that Morgan's hepatitis C was not severe.

Along those same lines, the Court also concludes that the ALJ applied the correct severity standard as set forth in *Stone v. Heckler*. 752 F.2d 1099. After citing to *Stone* the ALJ conducted an analysis of the extent to which Morgan had alleged his hepatitis C impacted his ability to work, which is after all the ultimate inquiry. Tr. 32. Despite Morgan's claim that the ALJ must use certain "magic words" from *Stone*, in fact the opposite is true. *Lynch*, 19 F.3d 14; *see* Pl.'s Br. 17 ("Here, the ALJ never quoted the 'magic words' of *Stone*.").[5]

Under SSRs 85-28 and 96-3p, which the ALJ cited, "[t]he severity requirement cannot be

---

[5] Additionally, it is true, as Morgan asserts, that at one point the ALJ states: "An impairment . . . is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." Pl.'s Br. 17 (quoting Tr. 30). This "significantly limits" language is not the prevailing construction of the severity standard under *Stone*. However, Morgan neglects the ALJ's very next sentence where the ALJ quotes the correct construction. Furthermore, in his application section, the ALJ correctly applies the law as laid out herein. Morgan's contentions on this point are unavailing.

satisfied when medical evidence shows that the person has the ability to perform basic work activities." SSR 85-28; *accord* SSR 96-3p ("[T]he purpose of this Ruling is to restate and clarify the policy that . . . [t]he evaluation of whether an [impairment] is severe . . . requires an assessment of the functionally limiting effects of an [impairment] on an individual's ability to do basic work activities." (internal quotation marks omitted). The ALJ performed this analysis exactly, finding as follows: "The claimant has also alleged the remote histories of hepatitis C and rheumatoid arthritis, but there is no objective medical evidence to corroborate the diagnoses and he has not sought further medical care for same. Examinations have been largely normal. The claimant has not alleged any work-related limitations from these conditions." Tr. 32 (citing *Yuckert*, 482 U.S. at 137; *Stone*, 752 F.2d at 1099; and SSR 96-3p).

Since the evidence did not show Morgan's hepatitis C impacted his ability to do work related activities, the severity requirement "cannot be satisfied." SSR 85-28. As noted, a court will remand "only where there is *no indication* the ALJ applied the correct legal standard." *Lynch*, 19 F.3d at 14. Here, there is sufficient indication that the ALJ applied the correct legal standard consistent with *Stone*. Morgan's argument on this point is unpersuasive.

### b. Listing 5.05

Morgan breaks down Listing 5.05 into component parts and cites to various portions of the record—some in the newly submitted evidence and some in the prior record—to establish these components. Pl.'s Br. 13–14. Once again, Listing 5.05 requires:

> Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood.

20 C.F.R. Part 404, Appendix 1, Subpart P § 5.05A. To show "hemorrhaging from esophageal . . . varices . . . demonstrated by endoscopy," Morgan points to the records from Denton Regional

dated October 21, 2011. *See* Pl.'s Br. 13 (citing Tr. 432); 20 C.F.R. Part 404, Appendix 1, Subpart P § 5.05A. As noted, on that occasion Morgan complained of black stool. Doctors performed an endoscopy and discovered bleeding esophageal varices. Tr. 432. This would seem to sync with the first portion of Listing 5.05A. However, the Listing continues, requiring the hemorrhaging to "[result] in hemodynamic instability as defined in 5.00D5, and [require] hospitalization for transfusion of at least 2 units of blood." 20 C.F.R. Part 404, Appendix 1, Subpart P § 5.05A. These final two requirements—hemodynamic instability requiring blood transfusion—Morgan attempts to satisfy by cherry-picking other portions of the record, a tactic for which he provides no support in the law. The plain language of the Listing places causal ties in between these requirements. It is these ties that Morgan is unable to establish when he pulls from various portions of various medical records.

For example, Morgan attempts to establish hemodynamic instability by showing a rapid pulse rate on February 15, 2011, the record of which the ALJ considered. *See* Pl.'s Br. 14 (citing Tr. 304).[6] However, there is no indication whatsoever that on February 15, 2011, it was hemorrhaging from esophageal varices as demonstrated by endoscopy which caused this rapid pulse rate. 20 C.F.R. Part 404, Appendix 1, Subpart P § 5.05A. Nor is there any indication that on February 15, 2011, Morgan's rapid pulse rate required "hospitalization for transfusion of at least 2 units of blood." *Id.* Morgan's other examples of hemodynamic instability suffer from the same infirmity. As do his attempts to establish the third and final requirement under Listing 5.05A, hospitalization for blood transfusion of at least two units. *Id.* Morgan cites instances in the record where he underwent transfusions of at least two units of blood, but he cannot show that hemorrhaging from esophageal varices demonstrated by endoscopy resulted in hemodynamic instability which required these hospitalizations for transfusion of at least two

---

[6] Section 5.00D5 provides, "Under 5.05A, hemodynamic instability is diagnosed with signs such as . . . rapid pulse."

units of blood. *See* Pl.'s Br. 14 (Citing Tr. 373–74, 426, 431–31).

As previously stated, in all cases a claimant bears the burden of proving with medical evidence that all the criteria of the listing are met. *Selders*, 914 F.2d at 619. Some of Listing 5.05's criteria are causal connections which Morgan fails to establish. As such, he fails to establish the listing. It naturally follows, then, that there exists no reasonable possibility that any newly submitted evidence would have changed the outcome of the ALJ's determination in regard to Morgan's ability to meet listing 5.05. *Latham*, 36 F.3d at 483).

In sum, Morgan submitted evidence to the AC which he did not submit to the ALJ. Some of that evidence was "new" under the law. Some of it related to the appropriate time period. When it comes to severity at step two, first, there is not a reasonable possibility that the newly submitted evidence would have changed the ALJ's determination. No physician or other medical source opined Morgan's hepatitis C was severe; the reverences to hepatitis C simply confirm its existence, which is legally distinct from its severity. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Therefore, Morgan fails to establish the new evidence was "material" under the law as to the severity of his hepatitis C at step two. Second, the ALJ applied the correct severity standard under *Stone v. Heckler*.

When it comes to the listings at step three, again some of the newly submitted evidence is "new" under the law. Some of it relates to the appropriate time period. However, because Morgan fails to establish all the criteria of Listing 5.05, there is not a reasonable possibility that the newly submitted evidence would have changed the outcome of the ALJ's determination that Morgan did not meet Listing 5.05. Therefore, Morgan fails to establish the new evidence was "material" under the law as to Listing 5.05.

The Court concludes the AC properly "considered" this new evidence prior to denying

review (Tr. 4), and "found no reason under [its] rules to review the [ALJ's] decision." Tr. 1; *Sun*, 793 F.3d at 511. Again, this Court's standard of review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). The Court discerns that substantial evidence does support the ALJ's decision, notwithstanding the submission of Morgan's new evidence. The Court further discerns the ALJ applied the proper legal standards.

## B. Developing the Record

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *accord Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "Generally, however, the duty to obtain medical records is on the claimant." *Gonzalez v. Barnhart*, 51 F.App'x 484 (5th Cir. 2002) (unpublished) (*per curiam*) (citing *Thornton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981)). The Court notes that Morgan was represented by counsel at every point in this proceeding, including the administrative hearing. Therefore, no "heightened duty to scrupulously and conscientiously explore all relevant facts" arose. *Castillo v. Barnhart*, 325 F.3d 550, 552–53 (5th Cir. 2003).

Assuming, *arguendo*, that the ALJ failed to develop the record by either not postponing his decision written decision until after Morgan had submitted records of a post-administrative hearing hospitalization,[7] or by not obtaining other evidence,[8] Morgan still does not convince the

---

[7] Morgan asserts that the ALJ erred in writing his opinion prior to receiving records of Morgan's October 21–24 stay at Denton Regional. Pl.'s Br. 15–16. On October 26, 2011, Morgan's attorney drafted a letter to the ALJ requesting two additional weeks to secure these records. There is not showing when this letter was mailed or otherwise transmitted to the ALJ, who published his decision on October 31, 2011.

[8] Morgan asserts: "The ALJ failed to properly develop the record by not ordering the new and material evidence cited above." Pl.'s Br. 15. This is a puzzling assertion, as some of the "new and material evidence" to which Morgan refers falls outside the relevant time period. Meaning some of the evidence to which Morgan refers did not exist until four months after the ALJ issued his decision. What is additionally puzzling is why Morgan provided some

Court that remand is required. "An allegation that the ALJ failed to fully and fairly develop the record is a substantial evidence issue." *Isbell v. Colvin*, No. 1:14-CV-006-C, 2015 WL 1208122, (N.D. Tex. Mar. 16, 2015) (slip op.) (citing *Brock*, 84 F.3d at 728). Remand on grounds of lack of substantial evidence is appropriate only where "the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock*, 84 F.3d at 728.

Morgan asserts the ALJ should have ordered and considered the very evidence that he submitted to the AC. That is, the Commissioner did in fact consider all the evidence Morgan alleges the ALJ should have considered. More to the point, however, as discussed in detail above, none of the evidence which Morgan alleges the ALJ should have obtained is material. The Court has found there is no reasonable possibility that any of the newly submitted evidence Morgan claims the ALJ should have obtained would have changed the outcome of the ALJ's decision. Therefore, the Court cannot find, and Morgan does not convince, that he was prejudiced in any way by the ALJ not having before him this additional evidence. Morgan's argument on this point is unavailing.

In the end, substantial evidence supports the decision of the Commissioner; as such, it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and Morgan's complaint is **DISMISSED** with prejudice. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

---

records from a particular hospital stay, but did not provide all such records. For example, Morgan provided the ALJ with sixty-one pages of records from his February 27, 2011, stay at Denton Regional, but waited until the AC stage to provide three additional pages from the same stay at Denton Regional. *See* Tr. 307–68 (submitted to ALJ), 426–29 (submitted only to AC).

**SO ORDERED.**

Dated March 24, 2016.

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**